UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

AUG 1 9 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01537 (AJT/IDD) |
| | ) |
| LESLEY RESTAURANT, INC., | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff J & J Sports Productions, Inc.'s ("Plaintiff's") Motion for Default Judgment against Defendant Lesley Restaurant, Inc. ("Defendant"), pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 11.) After a licensed attorney for Defendant failed to appear at the June 10, 2016 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint and Plaintiff's Motion for Default Judgment and the supporting affidavits thereto, the undersigned Magistrate Judge recommends that Plaintiff's motion be **GRANTED in part and DENIED in part**.

## I.      INTRODUCTION

On November 11, 2015, Plaintiff filed a Complaint seeking relief under § 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Section 553 provides relief to plaintiffs who are injured by defendants' unauthorized reception of cable services. 47 U.S.C. § 553(a). Section 605 provides relief to plaintiffs who are injured by defendants' unauthorized publication or use of communications. *Id.* § 605(a).

In this case, Plaintiff alleges that on November 23, 2013, Defendant willfully intercepted, received, and exhibited a closed-circuit telecast of *The Clash in Cotai: Manny Pacquiao v. Brandon Rios, WBO International Welterweight Championship Fight Program* and its preliminary events ("*The Clash in Cotai*"). (Compl. ¶¶ 6, 13.) Plaintiff seeks default judgment against Defendant and requests that the Court award Plaintiff statutory damages, enhanced damages, litigation costs, and costs and attorney's fees. (Dkt. No. 12, at 4.)

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1331, because this case arises under the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605, which is federal law. (*See* Compl. ¶¶ 1, 2.) Defendant's principal place of business is located at 306 Hillwood Ave., Falls Church, Virginia, 22046, which falls within the Eastern District of Virginia. (*See id.* ¶ 5.) Because Defendant's principal place of business is in this district, this Court has personal jurisdiction over Defendant. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945). Venue is also proper in this Court because Defendant's principal place of business is in this district. *See* 28 U.S.C. § 1391(b) and (d).

### B. Service of Process

For a court to have personal jurisdiction over a defendant for the purpose of entering default judgment, the plaintiff must properly serve the defendant under federal or state law. *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946) (stating that "[s]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served");

*Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249 (4th Cir. 1974) (reversing the district court's entry of default judgment because the court lacked personal jurisdiction where the plaintiff failed to effectively serve the defendant with the summons and complaint). The Federal Rules of Civil Procedure provide the manner in which service must occur.

Federal Rule of Civil Procedure 4(h) governs service upon corporations, partnerships, and other unincorporated associations and allows service "in the manner prescribed for individuals by subdivision (e)(1)" of that rule. FED. R. CIV. P. 4(h)(1)(A). Subdivision (e)(1) provides that service may be achieved "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Thus, in this case, service is proper if it is executed according to Virginia law.

Under the Code of Virginia, process may be served upon a domestic, nonstock corporation either by personal service on an officer, director, or registered agent or by substituted service in accordance with section 13.1-836. VA. CODE ANN. § 8.01-299(2). Substituted service on the Clerk of the State Corporation Commission is appropriate when "a corporation fails to appoint or maintain a registered agent in this Commonwealth, or [when] its registered agent cannot with reasonable diligence be found at the registered office." VA. CODE ANN. §§ 13.1-836(B).

On December 22, 2015, a private process server attempted to serve Judit Lizez Hernandez Jimenez, registered agent for Defendant, at Defendant's place of business in Falls Church, Virginia. (*See* Dkt. No. 5.) However, no one at the address spoke English, and when shown the agent's name, the individuals at the address shook their heads,

3

indicating to the process server that the agent was not available at that address. (*See id.*) Therefore, Defendant's agent could not, with reasonable diligence, be found at the registered address, and Plaintiff executed substituted service on the Clerk of the State Corporation Commission. On March 18, 2016, the Clerk of the State Corporation Commission filed a Certificate of Compliance with this Court. (Dkt. No. 7.) Based on the State Corporation Commission's Certificate of Compliance, the undersigned Magistrate Judge finds that the Defendant was properly served by substituted service under Virginia law.

### C.  *Grounds for Default*

Plaintiff filed its complaint on November 17, 2015. (Dkt. No. 1.) Defendant has failed to appear, answer, or file a responsive pleading in this matter. On May 10, 2016, Plaintiff filed a Request for Entry of Default with the Clerk's Office. (Dkt. No. 9.) The Clerk entered default against Defendant on May 17, 2016. (Dkt. No. 10.) On May 18, 2016, Plaintiff filed a Motion for Default Judgment, and on June 10, 2016, the Court conducted a hearing on Plaintiff's motion. (Dkt. Nos. 13, 19.) When a representative for the defaulting Defendant failed to appear at the hearing, the Court took this matter under advisement to issue this Report and Recommendation.

## II.  <u>FINDINGS OF FACT</u>

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiff has established the following facts.[1]

Plaintiff is a corporation organized and existing under the laws of California, with its principal place of business in Campbell, California. (Compl. ¶ 4.) Plaintiff is a closed

---

1 Because Defendant failed to answer Plaintiff's Complaint, Defendant admits Plaintiff's factual allegations. FED R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

circuit distributor of sports and entertainment programming. (Affidavit of Joseph M. Gagliardi ("Gagliardi Aff.") ¶ 3). With the advent of pay-per-view programming, Plaintiff began experiencing serious erosion in the sales of its programming. (*Id.* ¶ 4.) Plaintiff learned that the erosion was the result of piracy of Plaintiff's broadcasts by unauthorized establishments. (*Id.*) In response, Plaintiff embarked upon a program to police its signals and hired auditors and law enforcement personnel to detect and identify signal pirates. (*Id.* ¶¶ 5–6.)

In this case, Plaintiff paid substantial fees to become a party to a closed-circuit television license agreement ("License Agreement") under which Plaintiff would exhibit the closed-circuit broadcast of *The Clash in Cotai*. (Compl. ¶ 6.) Plaintiff entered into the License Agreement with the purpose of distributing the broadcast to commercial establishments throughout Virginia. (*Id.* ¶ 7.) As a result of the License Agreement, a Virginia commercial establishment could only exhibit *The Clash in Cotai* if Plaintiff authorized it to do so. (*Id.* ¶ 8.)

The transmission of the event was electronically coded or "scrambled." (*Id.* ¶ 10.) For the signal to be received and broadcasted clearly, it had to be decoded with electronic decoding equipment. (*Id.*) Establishments that contracted with Plaintiff were provided with the electronic decoding capability or satellite coordinates necessary to receive a clear signal of the event. (*Id.* ¶ 12.) Plaintiff argues that, because of the coding, it would have been impossible to mistakenly, innocently, or accidentally intercept the broadcast. (Gagliardi Aff. ¶ 9.)

Defendant is a commercial establishment located in Falls Church, Virginia. (Compl. ¶ 5.) Though the broadcast was available to Defendant for purchase, Defendant

did not contract with Plaintiff to purchase the broadcast. (*Id.* ¶ 11.) Defendant was therefore not authorized to intercept, receive, or transmit the event. (*Id.* ¶ 17.) However, Plaintiff's investigation showed that, on November 23, 2013, Defendant intercepted the broadcast of the event and allowed its patrons to view the broadcast in its establishment. (*Id.* ¶¶ 13, 15; Gagliardi Aff. ¶ 7.)

### III.   <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). A defendant in default concedes the factual allegations of the complaint. *See, e.g., DIRECTV, Inc. v. Rawlins,* 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.,* 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan,* 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to

dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### A. *Violation of 47 U.S.C. §§ 553 and 605*

The Complaint sets forth claims for unauthorized reception of cable service and unauthorized publication or use of radio and satellite communications under 47 U.S.C. §§ 553 and 605, respectively. (Compl. ¶¶ 20, 27.) Sections 553 and 605 were enacted as part of the Cable Communications Policy Act of 1984, which amended the Communications Act of 1934. Title 47 U.S.C. § 553 provides, in relevant part, that

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Title 47 U.S.C. § 605 provides, in relevant part, that

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge, or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Satellite communications fall under the purview of § 605 pursuant to subsections (b)–(d). 47 U.S.C. § 605(b)–(d); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 666 (E.D. Va. 2013).

Plaintiff alleges, and by failing to answer, Defendant admits, that Plaintiff obtained an exclusive license agreement to exhibit closed-circuit telecasts of *The Clash in Cotai* in the Commonwealth of Virginia. Plaintiff paid substantial fees to acquire rights to distribute closed-circuit broadcasting for commercial gain. As a result of the license agreement, Defendant could only intercept and exhibit *The Clash in Cotai* if Plaintiff authorized it to do so. Defendant did not contract with Plaintiff to purchase the broadcast and was therefore not authorized to intercept or exhibit it. Nonetheless, Defendant intercepted and exhibited the event.

Accordingly, Plaintiff's Complaint alleges sufficient facts to support a plausible claim that Defendant intercepted or received, without authorization, the interstate communication of *The Clash in Cotai* and exhibited it to patrons of El Gran Palenque Restaurant, Inc. Plaintiff has also alleged facts to support its claim that Defendant misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights to distribute the Event. Therefore, Plaintiff has properly pled claims under 47 U.S.C. §§ 553 and 605.

### B. *Statutory Damages*

Both § 553 and § 605 allow Plaintiff to recover either actual damages and lost profits, or statutory damages. 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i). Although Plaintiff has pled the elements of liability under both § 553 and § 605, recovery under both sections is improper. *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 666 (E.D. Va. 2013). In this district, courts normally calculate

damages under § 605 when a defendant is liable under both sections, as § 605 permits the award of higher damages. *Joe Hand Promotions, Inc. v. Sliders Sports Lounge, LLC*, No. 2:14cv20, 2014 WL 4444251, at *4 & n.3 (E.D. Va. Sept. 9, 2014.) Therefore, the undersigned recommends awarding damages under 47 U.S.C. § 605.

Under § 605, an aggrieved party may recover "statutory damages for each violation . . . in a sum of not less than $1,000.00 or more than $10,000.00." 47 U.S.C. § 605(e)(3)(C)(i)(II). In determining the amount of damages that can be imposed for each violation, § 605 leaves the decision within the sound discretion of the court. *See id.* (The aggrieved party may receive damages as the "court considers just.").

Plaintiff argues that it is entitled to maximum statutory damages in the amount of $10,000 for Defendant's interception and exhibition of the *The Clash in Cotai*. (Compl. ¶ 32.) Courts in this district have employed two general approaches to calculating statutory damages. *See Wing Spot*, 920 F. Supp. 2d at 667. Courts have based their damage calculations on either the number of patrons in the establishment during the illegal broadcast or the sublicense fee that the defendant should have paid. *Id.*

In this case, Plaintiff's sublicense fee to commercial establishments legally purchasing broadcast rights varied based on the capacity of the establishment. (Gagliardi Aff. ¶ 8.) Defendant's restaurant has a capacity of approximately 100 patrons, and 40 to 45 patrons were present for the event on November 23, 2013. (Affidavit of Brian Stephens ("Stephens Aff.") 2.) Defendant did not charge patrons a cover to enter the restaurant on the day of the event. (Stephens Aff. 1.) Because Plaintiff's sublicense fee was based on the capacity of the venue and Defendant did not charge a cover, an award per customer would not be appropriate in this case. Therefore, the undersigned finds that

statutory damages in this case should be based on the sublicense fee Defendant should have paid to broadcast the event. The undersigned recommends that Plaintiff be awarded statutory damages in the amount of $2,200.00, which is equal to the sublicense fee Defendant should have paid to broadcast the event. (*See* Gagliardi Aff. ¶ 8.)

### C. Enhanced Damages

Where a violation is "committed willfully and for purposes of commercial advantage or private gain," the court may increase the award of damages by an amount of not more than $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff seeks the maximum award of $100,000 in enhanced damages. (Compl. ¶ 32.)

Defendant's violation of § 605 occurred in a restaurant and was therefore committed in a commercial establishment and for purposes of direct or indirect commercial advantage. The pleadings allege that Defendant's signal interception is not one that can occur accidentally or innocently. (Gagliardi Aff. ¶ 9.) Furthermore, this Court has held that "[t]he act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant." *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 668 (E.D. Va. 2013). Therefore, the violation was also committed willfully, and Plaintiff is entitled to enhanced damages.

Enhanced damages awards under § 605 in this district vary considerably. *Wing Spot*, 920 F. Supp. 2d at 668 (collecting cases). While the amount of enhanced damages should be an adequate deterrent, a single violation "is not so serious as to warrant putting the restaurant out of business." *Id.* at 669 (quoting *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411(DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006)).

Courts have evaluated the appropriate amount of enhanced damages by assessing factors including allegations of "(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Id.* (quoting *Kingvision Pay-Per-View Ltd. v. Rodriguez*, No. 02 Civ. 7972(SHS), 2003 WL 548891, at *1 (S.D.N.Y. Feb. 24, 2003)).

In this case, Plaintiff does not make allegations that Defendant is a repeat offender or that Defendant obtained substantial monetary gains as a result of the violation. Defendant did not charge a cover for the event, (Stephens Aff. 1), and Plaintiff alleges no facts to suggest that Defendant advertised the broadcast or charged premiums for food and drinks during the broadcast. Because Defendant did not charge a cover and because the restaurant was filled to less than half its capacity, (Stephens Aff. 1–2), any profits Defendant reaped from its violation were likely nominal. However, Plaintiff states that it has lost several millions of dollars due to signal piracy in general and that the widespread nature of the piracy problem has resulted in higher costs of services to lawful commercial and residential cable and satellite customers. (Gagliardi Aff. ¶ 11.) Accordingly, the undersigned finds that $10,000.00 in enhanced damages should be sufficient to deter Defendant from repeating its conduct. Therefore, the undersigned recommends awarding statutory damages in the amount of $2,200.00 and enhanced damages in the amount of $10,000.00, for a total damage award of $12,200.00.

### D. *Attorney's Fees and Costs*

Title 47 U.S.C. § 605 allows the prevailing aggrieved party to recover full costs of litigation, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii). In support of Plaintiff's request for costs and attorney's fees, Plaintiff submitted the Declaration of W. Brian McCann ("McCann Decl."), detailing the work performed, the hours expended, and the total amount to be paid for his services to Plaintiff in connection with this matter. Mr. McCann declares that his firm expended a total of 11.8 hours of attorney time for a total fee of $2,950.00 (McCann Decl. ¶ 7, app.) Plaintiff also seeks $499.43 in costs, including the $400.00 filing fee. (*Id.* app.)

The undersigned Magistrate Judge finds that the requested attorney's fees and costs are reasonable compensation for the time expended to enforce Plaintiff's rights and recommends an award of $3,449.43.

## IV.   <u>RECOMMENDATION</u>

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be granted in part and denied in part. The motion should be granted in favor of J & J Sports Productions, Inc. as to the entry of default judgment against Lesley Restaurant, Inc., for violation of 47 U.S.C. §§ 553 and 605. The Motion should be denied as to the amount of damages requested. The undersigned Magistrate Judge recommends that an Order be entered directing the Defendant to pay statutory damages in the amount of $2,200.00, pursuant to 47 U.S.C. § 605(e)(2)(C)(i), and enhanced damages in the amount of $10,000.00, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Lastly, the undersigned Magistrate Judge recommends that

Plaintiff be awarded attorney's fees and costs in the amount of $3,449.43. Accordingly, Plaintiff should be awarded a total sum of $15,649.43.

V.    <u>NOTICE</u>

**By mailing copies of this Report and Recommendation, the parties are notified as follows.  Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation.  A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and Defendant at the following address:

Judit Lizez Hernandez Jimenez
Registered Agent for Lesly Restaurant, Inc.
306 Hillwood Avenue
Falls Church, VA 22046

                                            /s/
                                    Ivan D. Davis
                                    United States Magistrate Judge

August 19, 2016
Alexandria, Virginia